UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER M. HODGE                          CIVIL ACTION

VERSUS                                        NO. 08-3193

B.B. "SIXTY" RAYBURN CORRECTIONAL             SECTION:  "C"(3)
CENTER, ET AL.

### REPORT AND RECOMMENDATION

Plaintiff, Christopher M. Hodge, a state prisoner, filed this *pro se* complaint, pursuant to 42 U.S.C. § 1983, against the B.B. "Sixty" Rayburn Correctional Center, Warden Robert Tanner, Regional Warden Jeffery Travis, Warden Keith Bickham, and Louisiana Department of Public Safety and Corrections Secretary James LeBlanc.  In this lawsuit, plaintiff asserts various claims arising from his confinement.

A Spears hearing was held on July 3, 2008, to allow plaintiff an opportunity to orally advise the Court of the nature and factual bases of his claims.  See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[1]  At that hearing, he was sworn and his testimony was recorded. Based on his complaint, as amended,[2] and the Spears hearing testimony, the Court finds that plaintiff is asserting the following claims in this civil action.

_____

[1] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998).  The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

[2] After the Spears hearing, plaintiff filed an amended complaint.

Plaintiff's first claim is that prison officials have failed to follow the applicable policies of the Louisiana Department of Public Safety and Corrections regarding the length of time a prisoner may be kept in extended lockdown.  Specifically, plaintiff alleges that those policies provide that a prisoner is to be evaluated after ninety days in extended lockdown to determine whether a less-restrictive environment would be appropriate.  He claims that, as a result, he has been kept in lockdown for longer than is allowed by those policies.

Plaintiff's second claim is that he was placed in lockdown as result of a disciplinary proceeding which was conducted by videoconferencing and during which he was not allowed to see the evidence presented against him or present evidence on his own behalf.

Plaintiff's third claim is that he was kept in extended lockdown despite the fact that his disciplinary sentence was vacated after he prevailed on an administrative appeal.  As a result, he has not been eligible for parole.

Plaintiff's fourth claim is that, while in extended lockdown, he has been subjected to unduly restrictive policies.  At the <u>Spears</u> hearing, plaintiff testified that prisoners on extended lockdown are allowed to possess and use legal materials, mail, and supplies only between the hours of 11:00 a.m. and 5:00 p.m. on Monday through Friday.  He further complained about various other restrictions imposed on persons in extended lockdown, such as the curtailment of access to the law library, to books and periodicals, and to the mail services.

Plaintiff's fifth claim is that, during a shakedown, a copy of a state court transcript was taken from him and never returned.

2

Plaintiff's sixth claim is that his rights were violated when his cell was searched and his mail was opened without him being present.

Plaintiff's final "claim," as set forth in his amended complaint, is that his *habeas corpus* claim dismissed without prejudice for failure to exhaust state court remedies in Christopher M. Hodge v. Warden Travis, Civ. Action No. 06-11362 "J"(6) (E.D. La.), is now exhausted.

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

3

The Court has broad discretion in determining the frivolous nature of a complaint. <u>Cay v.</u> <u>Estelle</u>, 789 F.2d 318, 325 (5th Cir. 1986), <u>modified</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Booker v. Koonce</u>, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Macias v. Raul A. (Unknown), Badge</u> <u>No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994); <u>Booker</u>, 2 F.3d at 115 & n.6. Although broadly construing plaintiff's complaint, as amended,[3] and fully considering his <u>Spears</u> hearing testimony, the Court nevertheless finds that, for the following reasons, plaintiff's claims should be dismissed as frivolous, for otherwise failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

<u>B.B. "Sixty" Rayburn Correctional Center</u>

In the caption of the complaint, plaintiff indicates that the B.B. "Sixty" Rayburn Correctional Center is being named as a defendant. To the extent that plaintiff intended to sue the prison, that claim is improper and must be dismissed. "[A] jail is merely a building, not a 'person' subject to suit under 42 U.S.C. § 1983." <u>Castillo v. Blanco</u>, Civ. Action No. 07-215, 2007 WL 2264285, at *4 (E.D. La. Aug. 1, 2007); <u>see also</u> <u>Francis v. United States</u>, Civ. Action No. 07-1991, 2007 WL 2332322, at *2 & n.4 (E.D. La. Aug. 13, 2007); <u>Martinez v. Larpenter</u>, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); <u>Cullen v. DuPage County</u>, No. 99-C-1296, 1999 WL

---

[3] The court must liberally construe a *pro se* civil rights complaint. <u>See</u> <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994).

1212570, at *1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester County Correctional Facility</u> <u>Administration</u>, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); <u>Powell</u> <u>v. Cook County Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993); <u>Brooks v. Pembroke City Jail</u>, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); <u>Mitchell v. Chester County Farms Prison</u>, 426 F. Supp. 271, 274 (E.D. Pa. 1976).

Official-Capacity Claims for Monetary Damages

It is unclear from the complaint whether plaintiff is asserting claims against the defendants in their official capacities for monetary damages.  However, to the extent that plaintiff is asserting such claims, they must be dismissed for the following reasons.

All of the defendants are officials or employees of the Louisiana Department of Public Safety and Corrections.  A suit against a state official or employee in his official capacity is actually a suit against the state itself.  <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).  The Eleventh Amendment bars a state's citizens from filing suit against the state in federal court unless the state has waived its immunity.  <u>Cozzo v. Tangipahoa Parish Council-President Government</u>, 279 F.3d 273, 280 (5th Cir. 2002).  The United States Fifth Circuit Court of Appeals has noted:

> By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.  <u>See</u> La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

<u>Id</u>. at 281 (quotation marks and citations omitted).  Because the Eleventh Amendment deprives this Court of jurisdiction over the official-capacity claims for monetary damages, those claims should

5

be dismissed without prejudice. See Warnock v. Pecos County, Texas, 88 F.3d 341, 343 (5th Cir. 1996); Wilson v. Zimmerman, Civ. Action No. 08-3507, 2008 WL 2699740, at *3 (E.D. La. July 1, 2008).

As to plaintiff's claims against the defendants in their *individual* capacities or in any capacity for injunctive or declaratory relief,[4] those claims should be dismissed with prejudice as frivolous and for otherwise failing to state a claim on which relief may be granted for the following reasons.

### Failure to Follow Department Policies

As noted, plaintiff's first claim is that prison officials do not follow the applicable policies of the Louisiana Department of Public Safety and Corrections regarding the length of time a prisoner may be kept in extended lockdown. Even if that is true, it is of no moment in this federal action. A prison official's failure to follow the institution's policies, procedures, and regulations is, without more, simply not actionable in a federal civil rights lawsuit. See, e.g., Stanley v. Foster, 464 F.3d 565, 569 (5th Cir. 2006); Sandoval v. Fox, 135 Fed. App'x 691, 691-92 (5th Cir. 2005); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *9 (E.D. La. Aug. 1, 2007). Rather, such a claim is actionable only if an underlying federal constitutional violation results. For the reasons noted below, plaintiff's placement and continued confinement in extended lockdown was not unconstitutional.

---

[4] The Eleventh Amendment does not bar a § 1983 claim against a state official or employee in his official capacity where the relief sought is "declaratory or injunctive in nature and prospective in effect." Aguilar v. Texas Department of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998).

<u>Due Process Claims</u>

Plaintiff's second and third claims are essentially due process claims.  In those claims, he complains that he was denied due process in the prison disciplinary proceeding which led to his placement in extended lockdown and that he was kept in extended lockdown despite the fact that his disciplinary sentence was vacated after he prevailed on an administrative appeal.[5]  Those claims are foreclosed by <u>Sandin v. Conner</u>,  515 U.S. 472 (1995).

In <u>Sandin</u>, the United States Supreme Court held:

---

[5]  Out of an abundance of caution, the Court notes that plaintiff's implication that he was wrongly kept in lockdown for no reason after his sentence was vacated is factually inaccurate.  Plaintiff's disciplinary records regarding the incident in question are attached to this opinion as Attachment A.  Those records reflect that plaintiff was charged with and convicted of four disciplinary infractions stemming from incidents which occurred on July 29, 2007.  With respect to three of the charges, he was sentenced to four weeks of cell confinement.  With respect to the fourth charge, his punishment was the imposition of a previously suspended sentence of confinement to extended lockdown.  On December 7, 2007, the Secretary of the Louisiana Department of Public Safety and Corrections found that the imposition of the suspended sentence was "in error" and vacated that sentence; the Secretary then remanded the matter "for resentencing on that rule violation only."  In the remanded proceedings on December 19, 2007, the Disciplinary Board did *not* re-impose the suspended sentence; rather, plaintiff was resentenced to extended lockdown as an independent and distinct punishment based on the fourth charge.  He again appealed.  On January 18, 2008, Warden Travis denied that appeal, stating:

> This case was reviewed by the Secretary's office and it was determined the imposition of the suspended sentence was in error and the case was to be remanded. At the re-hearing, the suspended sentence was not utilized as a sanction for the Rule 30(b).  Instead, the Disciplinary Board imposed a sentence as authorized by the Disciplinary Rules and Procedures for Adult Inmates.  The Board did include the word "credit" following the sentencing documentation to alert future custody reviewers that you had already spent time in Extended Lockdown.  You were also given credit for your privilege loss.  As no other defense has been presented, I concur with the judgement of the Disciplinary Board.

Plaintiff then appealed that decision to the Secretary, who rejected the appeal on February 29, 2008.

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84 (citations omitted). The United States Fifth Circuit Court of Appeals has held: "In the wake of Sandin, ... 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996) (quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)). The Fifth Circuit has further noted that after Sandin "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added).

In the instant case, the records reflect that plaintiff's disciplinary proceeding and confinement in extended lockdown affected only the quality, not the quantity, of the time he must serve[6] and was

---

[6] The Court is aware that plaintiff opines that his confinement in extended lockdown adversely affects his ability to earn "good-time" credit and his opportunity for release on parole. Even if denial of such benefits could possibly *indirectly* affect the duration of plaintiff's confinement, the United States Fifth Circuit Court of Appeals has indicated that would be insufficient to entitle him to due process protections. In Luken v. Scott, 71 F.3d 192 (5th Cir. 1995), a inmate complained that his prison file contained false information regarding gang affiliation and, as a result, he was placed in administrative segregation which deprived him of the opportunity to earn good-time credit. The Fifth Circuit held:

not an atypical and significant hardship in relation to the ordinary incidents of prison life.
Accordingly, Sandin bars plaintiff's due process claims.

Limitations on Legal Materials

Plaintiff's fourth claim is that, while on extended lockdown at the B.B. "Sixty" Rayburn Correctional Center, he has been subjected to unduly restrictive policies. Specifically, he complains that he is allowed to possess and use legal materials, mail, and supplies only between the hours of 11:00 a.m. and 5:00 p.m. on Monday through Friday. He further complains about various other restrictions imposed on persons in extended lockdown, such as the curtailment of access to the law library, to books and periodicals, and to the mail services.

_____

> The loss of the opportunity to earn good-time credits, which might lead to earlier parole, is a collateral consequence of [the inmate's] custodial status. Yet, such speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests. Any of a host of administrative or disciplinary decisions made by prison authorities might somehow affect the timing of a prisoner's release, but such effects have never been held to confer a constitutionally protected liberty interest upon a prisoner such that prison authorities must comply with the Constitutional requirements of due process. For example, in Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995), we held that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to *automatically* accrue good-time credits as a consequence.

Id. at 193-94 (citation omitted) (emphasis in original).

The Court additionally notes that, in the amended complaint, plaintiff appears to make various convoluted allegations regarding the forfeiture of accrued good-time credit. However, in the disciplinary matter of concern in this case discussed in *supra* note 5, plaintiff's punishment did *not* include the forfeiture of accrued good-time credit. Moreover, to the extent that plaintiff wishes to assert a claim that at some point his accrued good-time credit was wrongly forfeited, that is a claim for another time. Any such action to recover such good-time credit must be brought in a *habeas corpus* proceeding, while any claims for damages or declaratory relief "are not cognizable in a § 1983 action until the relevant [disciplinary] conviction has been reversed." Coleman v. Department of Public Safety and Corrections, 231 Fed. App'x 375, 376 (5th Cir. 2007).

A challenge to the restricted access to legal materials, mail, and supplies at the prison was previously considered and specifically rejected by this Court in George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744 (E.D. La. May 10, 2007).  In the decision in that case subsequently adopted by United States District Judge Sarah Vance, United States Magistrate Judge Sally Shushan noted:

> Plaintiff's claim is essentially an "access to courts" claim.  Although there appears to be a dearth of jurisprudence in this Circuit dealing with the precise type of restriction plaintiff challenges, the Court can find guidance in the substantial body of jurisprudence concerning the analogous situation where inmates have restricted access to law libraries.  Although denying inmates in lockdown *any* access to a law library is indeed problematic, the United States Fifth Circuit Court of Appeals has noted such access rights generally "may be narrowed without constitutional difficulty."  Eason v. Thaler, 14 F.3d 8, 9 (5th Cir. 1994).  The Court of Appeals has further made clear that the Constitution does not require unlimited access; rather, limitations are generally permissible so long as they are reasonably related to legitimate penological interests.  McDonald v. Steward, 132 F.3d 225, 230 (5th Cir. 1998).
>
> There are at least two justifications to support this challenged restriction on inmates in extended lockdown.  First, as was explained to plaintiff in a memorandum from Major Larry Grow, which plaintiff has attached to his complaint, inmates in extended lockdown, such as himself, "have demonstrated a need for close supervision and to protect the institution, staff, and other inmates from your actions."  Second, a legitimate penological interest is served when restrictions are imposed on inmates who, due to their failure to comply with prison rules, have been placed on extended lockdown.  The United States Fifth Circuit Court of Appeals has noted: "To promote the important government interest in maintaining discipline, officials must have available sanctions that impose incremental disadvantages on those already imprisoned."  Daigre v. Maggio, 719 F.2d 1310, 1313 (5th Cir. 1984).  Therefore, prison officials are afforded latitude to impose restrictions and deprivations, even punitive ones, on prisoners who "have demonstrated their defiance of prison rules."  Id. at 1312.  Indeed, "deprivations beyond those imposed on the general prison population is the very essence of internal prison discipline."  Id.
>
> As noted, the prison rule here limits inmates in extended lockdown to thirty hours of access per week to their legal materials.  This Court has no hesitation in concluding that such a period is perfectly reasonable, if not generous, for inmates in extended lockdown.  As noted in one of the attachments to plaintiff's complaint, such inmates arguably have even *more* time available to them for their legal work than

> inmates in the general population who have prison jobs.  Further, the prohibition against allowing such inmates to store such materials in their cell is a reasonable one, in that, as is evident from the facts of this very case, inmates, including plaintiff himself, have been known to hide contraband within the materials.  Such measures to ensure compliance with prison rules is not unreasonable when imposed on inmates who have demonstrated their unwillingness to obey such rules.

George, 2007 WL 1428744, at *3-4 (footnotes omitted).  For the same reasons as stated in George, the undersigned recommends that plaintiff's identical claim challenging the same policy likewise be dismissed as frivolous.  Further, in light of the fact that the restrictions concerning access to the courts are valid, the lesser restrictions on non-legal books and periodicals and mail privileges are clearly constitutional as well.  If prison officials were unable to impose such restrictions on those inmates confined in disciplinary lockdown, "a prisoner might find punitive isolation desirable, offering solitude and leisure as an alternative to the ordinary conditions of prison work and life.  Thus a narrower restriction on first amendment interests would likely prove ineffective in maintaining discipline."  Daigre, 719 F.2d at 1313.

### Confiscation of Transcript/Searches Outside of Inmate's Presence

Plaintiff's next claims are that his copy of a state court transcript was confiscated during a shakedown as contraband and never returned and that his rights were violated when his cell was searched and his mail was opened outside of his presence.

Plaintiff has not named a proper defendant with respect to these claims.  "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions:  The plaintiff must allege specific facts giving rise to the constitutional claims."  Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).  "Personal involvement is an essential element of a civil rights

11

cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  Therefore, the claims

against the named defendants, Robert Tanner, Jeffery Travis, Keith Bickham, and James LeBlanc,

must be dismissed because they were not personally involved in the alleged confiscation and failure

to return plaintiff's transcript, in the shakedowns, or the opening of the mail.  Further, the fact that

they hold supervisory positions is not a basis to hold them liable in a federal civil rights action under

any theory of strict liability[7] or vicarious liability.[8]

However, out of an abundance of caution, the Court notes that, even if plaintiff had named

a proper defendant, his claims still would not be actionable in this federal civil rights lawsuit for the

following reasons.

As to the claim regarding the transcript, that claim is precluded by the Parratt/Hudson

doctrine.  In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where

a state actor, through his random and unauthorized actions, *negligently* deprives a prisoner of his

property, there is no due process violation *if* the state provides an adequate postdeprivation remedy.

In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to *intentional*

deprivations of property.  In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Supreme Court

then overruled Parratt in part, holding that merely negligent deprivations of property simply do not

implicate the Due Process Clause at all.

---

[7] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ([T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996).

[8] An official cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of vicarious liability.  Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

It is of no consequence whether plaintiff is alleging that his copy of the transcript has been lost or destroyed through negligence or an intentional act, because "in neither instance does he state a valid § 1983 action for deprivation of property." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).  If plaintiff is claiming negligence, his claim would barred by Daniels.  If he is claiming intentional conduct, the claim would be barred by Hudson, in that Louisiana law clearly provides him with an adequate postdeprivation remedy, i.e. a tort suit brought in state court. Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); Bennett v. Louisiana Department of Public Safety and Corrections, 61 Fed. App'x 919 (5th 2003); Arnold v. Inmate Accounts, 48 Fed. App'x 105 (5th Cir. 2002). Accordingly, he may not pursue such a claim in this federal forum.  If he wishes to assert a claim for his property, he may do so only in the state courts.

Second, plaintiff's claim that his rights were violated because the cell shakedown took place without him being present is clearly meritless.  An inmate has no constitutional right to be present during such searches. Bell v. Wolfish, 441 U.S. 520, 555-57 (1979); see also Block v. Rutherford, 468 U.S. 576, 589-91 (1984); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *6 (E.D. La. May 10, 2007).

Lastly, plaintiff's claim that his rights were violated because his mail was opened without him being present also has no merit.  The United States Fifth Circuit Court of Appeals has clearly held that an inmate's constitutional rights are not violated by the mere fact that his mail is opened and read outside of his presence and without his consent. Brewer v. Wilkinson, 3 F.3d 816, 825 (5th Cir. 1999); see also Malone v. Pedigo, No. 07-11025, 2008 WL 2477577 (5th Cir. June 19, 2008);

Jones v. Mail Room Staff, 74 Fed. App'x 418, 419 (5th Cir. 2003); Singletary v. Stalder, 273 F.3d 1108 (5th Cir. 2001).

*Habeas Corpus* Claim

Finally, as noted, plaintiff contends in his amended complaint that he has now exhausted his state court remedies with respect to his *habeas corpus* claim that was previously dismissed without prejudice in Christopher M. Hodge v. Warden Travis, Civ. Action No. 06-11362 "J"(6) (E.D. La. Aug. 27, 2007). However, plaintiff may not reurge that claim in this § 1983 proceeding. Rather, if he wishes to reassert that claim now that it is allegedly exhausted, he must file a new *habeas corpus* petition. That petition will then be heard by United States District Judge Carl J. Barbier and United States Magistrate Judge Louis Moore, Jr., as they are the ones to whom the original *habeas corpus* petition was allotted. See Local Rules 3.1 and 3.1.1

**RECOMMENDATION**

It is therefore **RECOMMENDED** that the official-capacity claims for monetary damages against Robert Tanner, Jeffery Travis, Keith Bickham, and James LeBlanc be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's remaining § 1983 claims be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's *habeas corpus* claim be **DISMISSED WITHOUT PREJUDICE** to its being refiled in a federal *habeas corpus* proceeding.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being

14

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventeenth day of July, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

15